## Castor *versus* McShaffery.

*Trover not maintainable by party who has neither title nor possession.*

One who has been hired to take out stone from the quarry of a third person, by a contractor who has contracted with a turnpike company to stone a portion of their road, has no such property in the stones quarried by him after his employer has abandoned his contract, as will enable him, after leaving possession, to maintain trover therefor against the agent of the company by whose order the stones thus quarried had been subsequently placed upon the road.

Error to the Common Pleas of *Philadelphia*.

This was an action on the case by Henry McShaffery against Peter Castor, in which the plaintiff declared in trover for a certain quantity of broken stone. The defendant pleaded not guilty, and on the trial, under the ruling of the court below, there was a verdict and judgment for plaintiff.

The whole case, with the errors assigned by plaintiff in error, will be found in the opinion of this court.

*B. Woodward*, for plaintiff in error.

The defendant's counsel presented no printed argument.

Per Curiam.—James McGucken contracted with The Frankford and Oxford Turnpike Company to quarry stone, and stone a portion of their road; he contracted with Knorr for leave to quarry the stone on his land, and he hired McShaffery to do the work of quarrying. Knorr was to have fifteen cents a perch for the stone-leave, to be paid to him by the turnpike company, and McShaffery was to have seventy or seventy-five cents the perch for quarrying and breaking the stone, to be paid to him by McGucken.

[Castor *v.* McShaffery.]

Such were the relations between these several parties when McGucken gave up his contract with the turnpike company. After he had abandoned the contract, McShaffery continued his work and quarried the stones in question in this suit. McGucken swore that he had ceased quarrying before he abandoned his contract with the company, and that he did not employ McShaffery to quarry the stones in question. He said, moreover, that he left McShaffery at the quarry; that McShaffery quarried and broke the stone in question; that he (McGucken) paid McShaffery nothing for the stones, but advised him to sell them, and that he (McGucken) did not own the stone—that the stone in question were never his.

There was no other evidence of McGucken's ownership, yet the court told the jury the stone in question were McGucken's, and he could do what he pleased with them; he could sell them to the plaintiff or any one else. To have submitted the question to the jury upon such evidence would have been error, but it was more manifest error to rule it as a conclusion of law that the stone were McGucken's property. Quarried on Knorr's land after his contract with the company was at an end, and after his employment of McShaffery had ceased, how was it possible for McGucken to have any property in the stones? Swearing that he had no property in them, on what ground could the learned judge rule that he had? If he had no property in them, he could transfer none to McShaffery, and we see not a particle of evidence of any attempt to sell or transfer them to McShaffery. Then how did McShaffery acquire title that would support an action of trover against the agent of the turnpike company? He had not the possession, in virtue of which he might perhaps have claimed a lien for his labour, and so far as the record shows, he had no title. Without title, possession, or lien, McShaffery cannot maintain trover. Whether he can recover against McGucken or the company in an action of *assumpsit* for work and labour, need not now be considered. It is enough for the present to say that upon the facts exhibited, he was not entitled to recover in an action of trover.

The judgment is reversed.